UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
J.L., Individually and on Behalf of and as Parent
of J.R., a Student with a Disability,                            **COMPLAINT**

                                        Plaintiff,              Civil Action No.

                - against -

NEW YORK CITY DEPARTMENT                                        ECF Case
OF EDUCATION,

                                        Defendant.
------------------------------------------------------------------X

**CV 15        1200**

## PRELIMINARY STATEMENT

1. This action is authorized by the Individuals with Disabilities Education Improvement Act
of 2004 ("IDEA"), 20 U.S.C. § 1415(i)(2)(A), to review a final administrative decision of the
New York State Review Officer ("SRO") regarding the provision of a free appropriate public
education ("FAPE") to J.R., a student with a disability.

2. Plaintiff J.L. (or "Ms. L.") seeks reversal of the SRO's November 25, 2014 decision
denying her tuition funding for J.R.'s placement at Mary McDowell Friends School ("Mary
McDowell"), a private, not-for-profit school for students with disabilities, for the 2012–2013
school year.

3. This action is timely commenced within four months after the date of the SRO decision
pursuant to 20 U.S.C. § 1415(i)(2)(B) and New York Education Law § 4404(3)(a).

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction over this action under the IDEA, 20 U.S.C. §
1415(i)(2)(A), and 28 U.S.C. §§ 1331 and 1343.

5. The Court has supplemental jurisdiction to adjudicate state claims arising out of the same facts as the asserted federal claims. 28 U.S.C. § 1367.

6. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) as the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."

## PARTIES

7. Plaintiff Ms. L. is the mother and legal guardian of J.R.

8. J.R. was born in 2003 and is currently 11 years old.

9. Ms. L. and J.R. are identified by their initials in the caption of this action and throughout the Complaint consistent with Federal Rule of Civil Procedure 5.2(a) and the privacy provisions of the IDEA, 20 U.S.C. § 1417(c).[1]

10. Ms. L. and J.R. reside together in an apartment in Staten Island, New York.

11. Defendant DOE is a municipal corporation that operates in all five boroughs of New York City. The DOE office responsible for overseeing matters related to J.R.'s education during

---

[1] Federal Rule of Civil Procedure 5.2(a) provides that in court filings that contain "the name of an individual known to be a minor," the filing may include only the minor's initials. This Complaint refers to Ms. L. by her initials to protect the privacy of J.R. *See P.M. ex rel. J.M. v. Evans–Brant Cent. Sch. Dist.*, No. 08-CV-168A, 2008 WL 4379490, at *3 (W.D.N.Y. Sept. 22, 2008) ("Since a parent must proceed on behalf of a minor child, the protection afforded to the minor would be eviscerated unless the parent was also permitted to proceed using initials. . . . [I]n an action commenced by a parent or guardian on behalf of a minor child pursuant to the IDEA, the plaintiffs should be permitted to proceed, as a matter of course, using initials in place of full names in public filings with the Court"); *see also J.M. ex rel. L.M. v. New York City Dep't of Educ.*, No. 12-CV-8504(KPF), 2013 WL 5951436, at *1 n.1 (S.D.N.Y. Nov. 7, 2013) (quoting the previously cited portion of *P.M.* favorably and stating that the Court therefore would "not expressly name the child or the parents"); *cf. T.H. v. New York City Dep't of Educ.*, 13-CV-8777(JLC), 2015 WL 220982 at *1 n.1 (S.D.N.Y. Jan. 14, 2015) ("Plaintiffs are named in this case using only their initials in order to preserve the privacy guaranteed the plaintiff children by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., as well as by the Family Educational Rights Privacy Act, 20 U.S.C. § 1232(g) and 34 C.F.R. § 99").

the 2012-2013 school year was the Committee on Special Education ("CSE") Region 8, located at 131 Livingston Street, Brooklyn, New York 11201.

12. The DOE is responsible under the IDEA and the New York State Education Law for providing a FAPE to New York City residents between the ages of three and 21 who have been classified as students with disabilities in need of special education services and who have not yet received a regular high school diploma.

## LEGAL FRAMEWORK

13. In enacting the IDEA, Congress created a comprehensive statutory framework to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A).

14. States receiving federal financial assistance under the IDEA must adhere to the Act's procedural and substantive requirements and must ensure that all children with disabilities are afforded a FAPE. 20 U.S.C. § 1412(a).

15. In order to satisfy the requirements of the IDEA, a school district must provide each disabled child with "special education and related services," 20 U.S.C. § 1401(9), that are "reasonably calculated to enable the child to receive educational benefits." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 207 (1982).

16. School districts must have an Individualized Education Program ("IEP") in place for each student with a disability at the beginning of each school year and must review that IEP not less than annually. 20 U.S.C. §§ 1414(d)(2)(A), (d)(4)(A)(i).

17. School districts also must provide each student with a placement at a school capable of implementing the student's IEP and providing the student with an appropriate education for each

3

school year. *T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 420 (2d Cir. 2009) (stating that school districts do not have "carte blanche to assign a child to a school that cannot satisfy the IEP's requirements").

**Due Process Procedures**

18. The IDEA provides "procedural safeguards that enable parents and students to challenge the local educational agency's decisions," *Murphy v. Arlington Cent. Sch. Dist.*, 297 F.3d 195, 197 (2d Cir. 2002) (citing 20 U.S.C. § 1415), including the right to file a due process complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A).

19. In New York, IDEA due process complaints initially must be litigated in a hearing conducted at the school district level before an Impartial Hearing Officer ("IHO"). N.Y. Educ. L. § 4404(1); 8 N.Y.C.R.R. § 200.5(i)–(j).

20. Under New York State law, school districts bear the burden of proof at impartial hearings, "including the burden of persuasion and burden of production," "except that a parent or person in parental relation seeking tuition reimbursement for a unilateral parental placement shall have the burden of persuasion and burden of production on the appropriateness of such placement." N.Y. Educ. L. § 4404(1)(c); *see Reyes v. New York City Dep't of Educ.*, 760 F.3d 211, 215 (2d Cir. 2014) ("Under New York law, the school district bears the burden of proof, 'including the burden of persuasion and burden of production,' to establish that its proposed IEP provided the child a FAPE") (quoting N.Y. Educ. L. § 4404(1)(c)).

21. The decisions reached in impartial hearings are subject to administrative appeals to the SRO. 20 U.S.C. § 1415(g); 34 C.F.R. § 300.514(b); N.Y. Educ. L. § 4404(2); 8 N.Y.C.R.R. § 200.5(k).

22. Once administrative remedies have been exhausted, either party may seek independent judicial review of the SRO's decision in the state or federal courts. 20 U.S.C. § 1415(i)(2)(A).

23. In an appeal to the federal district court under 20 U.S.C. § 1415(i)(2)(A), the court receives the record of the administrative proceedings and may accept additional evidence at the request of either party. 20 U.S.C. § 1415(i)(2)(C).

24. "[T]he district court must engage in an independent review of the administrative record and make a determination based on a 'preponderance of the evidence,'" giving "due weight" to the administrative proceedings. *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112-13 (2d Cir. 2007).

25. The court does not accord "due weight" when there are no administrative findings on an issue. *Jennifer D. ex rel. Travis D. v. New York City Dep't of Educ.*, 550 F.Supp.2d 420, 432 (S.D.N.Y. 2008). Nor does a court accord "due weight" to administrative proceedings when determining questions of law. *Lillbask ex rel. Mauclaire v. Connecticut Dep't of Educ.*, 397 F.3d 77, 82 (2d Cir. 2005); *see also E.M. ex rel. N.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 456-57 (2d Cir. 2014) ("we need not defer to the findings of state administrative officers on questions, such as contract interpretation or the requirements of standing, that fall outside of their field of expertise").

26. The "SRO's or IHO's factual findings must be 'reasoned and supported by the record' to warrant deference." *M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 241 (2d Cir. 2012) (quoting *Gagliardo*, 489 F.3d at 114).

**Tuition Payment Remedy**

27. The IDEA grants courts broad discretion to "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii).

28. In *Burlington v. Department of Education*, 471 U.S. 359 (1985), the Supreme Court interpreted this statutory provision to "confer[] broad discretion on the court" to grant relief that is "'appropriate' in light of the purpose of the Act," *id.* at 369, including an award of tuition reimbursement to parents where (1) the services offered by the school district are inadequate or inappropriate; (2) the private school selected by the parents is an appropriate placement for the student; and (3) equitable considerations support the parent's claim (the three "*Burlington* prongs"), *id.* at 369–70, 374; *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 12, 16 (1993).

29. The 1997 and 2004 reauthorizations of the IDEA include a tuition reimbursement provision stating: "If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment." 20 U.S.C. § 1412(a)(10)(C)(ii); IDEA Amendments of 1997, Pub. L. No. 105-17, 111 Stat. 37, 63 (1997).

**Direct Tuition Payment**

30. The Second Circuit has held that payment of the tuition directly to a private school is appropriate where a school is willing to admit the child of a low-income parent while the parent pursues her due process remedies under the IDEA. *See E.M.*, 758 F.3d at 453-54 ("[i]ndeed,

6

where the equities call for it, direct payment fits comfortably within the *Burlington-Carter* framework: like reimbursement, direct payment to the private school that provided the required educational program 'merely requires [the school district] to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP'") (alteration in original) (quoting *Burlington*, 471 U.S. at 370–71); *see also Mr. and Mrs. A ex rel. D.A. v. New York City Dep't of Educ.*, 769 F.Supp.2d 403, 428 (S.D.N.Y. 2011) (payment of tuition directly to the private school is an appropriate remedy where the parent satisfies all three *Burlington* prongs, the "parents lack the financial resources to 'front' the costs of private school tuition, and ... a private school is willing to enroll the student and take the risk that the parents will not be able to pay tuition costs").

## FACTS

### J.R.'s Disability and Educational History

31. J.R. was nine years old and in his fourth-grade year during the 2012–2013 school year.

32. The DOE classified J.R. as a student with a Learning Disability.

33. J.R. was first evaluated for special education services in preschool, when his mother noticed that he had more difficulty learning new information than other children.

34. J.R. struggles with working memory and needs a great deal of repetition to learn new material.

35. He needs significant learning supports due to expressive and receptive language processing impairments as well as auditory processing difficulties.

36. J.R. becomes frustrated when he cannot keep up in class, and he requires a calm and intensively supportive environment to make progress.

37. J.R. attended public schools for kindergarten and first grade.

38. Ms. L. initially enrolled J.R. at Mary McDowell for his second grade year, the 2010-2011 school year.

39. The 2012–2013 school year was J.R.'s third year at Mary McDowell.

40. During J.R.'s first year at Mary McDowell, he was in a class with a total of 10 students and two teachers.

41. During J.R.'s second year at Mary McDowell, he was in a class with a total of 11 students and two teachers.

42. J.R. became frustrated and was unable to keep up in his classes of 10 and 11 students and two teachers. Due to J.R.'s troubles in these classes, his educators at Mary McDowell decided that he required a smaller class with greater individual supports. Therefore, for the 2012–2013 school year, J.R. was placed in Mary McDowell's "Whittier Room," a classroom with seven students and two teachers.

**The May 29, 2012 CSE Meeting and the DOE's IEP and Recommended Placement at P.S. 8**

43. The DOE's Committee on Special Education ("CSE") convened on May 29, 2012 to prepare J.R.'s IEP for the 2012–2013 school year.

44. The individuals present at the May 2012 CSE meeting were: Ann Parise, a special education teacher assigned to CSE Region 8; Shirley Piccola, a school psychologist assigned to CSE Region 8 who also served as the district representative; Anh Lui, a parent member of CSE Region 8; Ms. L.; and Michelle Carfagna, one of J.R.'s teachers at Mary McDowell during the 2011-2012 school year, who participated by telephone.

45. The DOE reviewed Mary McDowell reports and information from Ms. Carfagna about J.R.'s functional abilities in making the recommendations contained in the May 2012 IEP.

46. The May 2012 IEP recommended that for the 2012-2013 school year J.R. be placed in a 12:1+1 class, meaning a class with one teacher and one paraprofessional for 12 students, five times per week for the following subjects: Math, English Language Arts, Social Studies, and Science.

47. The May 2012 IEP did not indicate the student-to-teacher ratio of the classes J.R. would be placed in for other subjects.

48. The May 2012 IEP recommended 60 minutes per week of individual speech and language therapy, 30 minutes per week of individual occupational therapy, and 30 minutes per week of group counseling.

49. As for testing accommodations, the May 2012 IEP required that J.R. be allowed extended time for all testing. The IEP also called for J.R. to be tested in a location with minimal distractions, to be given revised test formats with directions and questions read and re-read aloud, and to be allowed to use arithmetic tables as needed.

50. At the May 2012 CSE meeting, Ms. L. and J.R.'s teacher at McDowell, Ms. Carfagna, stated that in order for J.R. to be able to manage frustration and learn he needed more one-on-one support and a much smaller class throughout the school day than a 12:1+1 program provided.

51. Despite Ms. L.'s and Ms. Carfagna's objections to the 12:1+1 program recommendation as being too large a setting for J.R., the DOE did not consider a smaller setting for him.

52. The only other programs that the DOE considered for J.R. were an Integrated Co-Teaching class, which may have up to 30 students in a classroom, and a class with a 12:1 student-to-teacher ratio.

53. By an August 13, 2012 notice, the DOE recommended that J.R. be placed at P.S. 8 – The Shirlee Solomon School ("P.S. 8") for the 2012–2013 school year.

54. On August 22, 2012, Ms. L.'s counsel wrote to inform the DOE that Ms. L. had not yet been able to visit P.S. 8 because the school was closed, but that she would visit the school as soon as it reopened to determine if it was appropriate for J.R. The attorney also noted that Ms. L. believed that a 12:1+1 class could not meet J.R.'s needs, and that at that point Ms. L. was planning to reenroll J.R. at Mary McDowell for the 2012-2013 school year and seek tuition payment from the DOE.

55. Ms. L.'s counsel wrote to the DOE again on October 1, 2012, reporting that Ms. L. had visited P.S. 8 and concluded that its program was inappropriate for J.R.

**J.R.'s Enrollment at Mary McDowell**

56. Ms. L. signed a contract reenrolling J.R. at Mary McDowell for the 2012–2013 school year on August 31, 2012.

57. The enrollment contract afforded Ms. L. flexibility to continue working with the DOE to identify an appropriate public school placement for J.R.

58. If Ms. L. decided to accept a public school placement for J.R., she could withdraw J.R. from Mary McDowell by October 1, 2012 and only be financially responsible for a $500 deposit.

59. J.R.'s 2012–2013 school year tuition at Mary McDowell was $71,808.00.

**J.R.'s Educational Program at Mary McDowell**

60. J.R. was assigned to the "Whittier Room" at Mary McDowell for the 2012–2013 school year, beginning in September 2012.

61. The Whittier Room had two teachers for its seven students.

62. Like J.R., the Whittier Room's six other students all had language-based learning disabilities.

63. There were no students in the Whittier Room with behavior problems.

10

64. In the Whittier Room, the teachers used a multisensory and hands-on approach and presented new material to the students multiple times.

65. J.R. was in a four-student math group that met four times a week for 45 minute sessions.

66. J.R. was in a four-student reading group that met for one hour sessions four times a week.

67. Mary McDowell provided J.R. with 90 minutes a week of speech and language therapy and 60 minutes a week of occupational therapy in sessions that he attended with one other student.

68. During his 2012-2013 school year at Mary McDowell, J.R. met with a counselor on an as-needed basis, which amounted to about once a week.

69. J.R. made progress in reading at Mary McDowell during the 2012–2013 school year. His reading comprehension improved as his ability to decode most consonant-vowel-consonant words and sight words (commonly occurring words) had improved. By the end of January 2013, he was beginning to be able to decode blend words (words formed from parts of two or more other words) and add suffixes to the end of words.

70. Compared with the start of the 2012-2013 school year, by January 2013 J.R. had gained confidence in his ability to learn and was beginning to moderate his frustration, which allowed him to attempt more difficult academic exercises.

**The Impartial Hearing**

71. On November 19, 2012, Ms. L.'s attorney filed a due process complaint alleging that the DOE's recommended 12:1+1 program and the DOE's proposed placement school, P.S. 8, were not appropriate for J.R.

72. Ms. L. requested that an IHO find: 1) that the DOE failed to offer J.R. a FAPE for the 2012–2013 school year; 2) that Mary McDowell's Whittier Room was an appropriate placement for J.R.; and 3) that equitable considerations favored her claim for tuition.

73. The due process complaint requested an order directing the DOE to pay J.R.'s 2012–2013 school year tuition, totaling $71,808.00, to Mary McDowell.

74. The case was assigned to IHO Esther Mora, who presided over hearing dates on January 24 and February 26, 2013.

75. While the IDEA, at 20 U.S.C. § 1415(f)(2)(A), requires that the parties disclose evidence five business days prior to the start of an impartial hearing, the DOE did not provide its evidence to Ms. L.'s attorney until the start of the first hearing date, January 24, 2013.

76. The DOE presented two pieces of documentary evidence at the impartial hearing, neither of which were before the individuals at the May 2012 CSE meeting:

(a) the May 2012 IEP; and

(b) the DOE's August 13, 2012 notice placing J.R. at P.S. 8 for the 2012-2013 school year.

77. The DOE presented two witnesses: Ms. Piccola, the DOE school psychologist and the district representative at the May 2012 CSE meeting; and Jennie Datre, a special education teacher in a 12:1+1 classroom at P.S. 8.

78. Ms. Piccola testified that she relied only on a school report from Mary McDowell and information from J.R.'s teacher at Mary McDowell, Ms. Carfagna, who was at the May 2012 CSE meeting, in making recommendations for J.R. for the 2012-2013 school year.

79. Ms. Piccola acknowledged that Ms. Carfagna, as well as Ms. L., disagreed with the DOE's 12:1+1 program recommendation.

80. Ms. Piccola's testimony recounted the contents of the May 2012 IEP, but offered no justification for its recommended 12:1+1 program for J.R.

81. Ms. Datre testified that she was familiar with J.R. from reading his May 2012 IEP and, at the elicitation of the DOE's hearing representative, stated that P.S. 8 could not comply with all of the testing accommodations in the May 2012 IEP. She stated that she did not think that P.S. 8 had the personnel to provide J.R. with a seperate location with minimal distractions for all of his tests.

82. Ms. Darte stated that if J.R. attended P.S. 8 his IEP would probably need to be changed to require minimal distractions only on standardized testing rather than on all testing.

83. Ms. Datre also testified that three students in her 12:1+1 classroom at P.S. 8 had behavioral issues.

84. Ms. L. presented the following documentary evidence at the impartial hearing:

(a) a mission statement and general description of Mary McDowell's educational program;

(b) a description of the Whittier Room's program for Mary McDowell's students who needed more intensive services and supports and a smaller classroom environment;

(c) the Whittier Room schedule for the 2012–2013 school year;

(d) the August 31, 2012 enrollment contract between Ms. L. and Mary McDowell for J.R.'s 2012–2013 school year;

(e) J.R.'s attendance report at Mary McDowell through December 4, 2012;

(f) an affidavit from Teresa Tong, a Business Office Associate at Mary McDowell, stating that Ms. L. owed all of J.R.'s $71,808.00 2012–2013 school year tuition to Mary McDowell;

(g) the August 22, 2012 letter from Ms. L.'s attorney to the DOE;

(h) the October 1, 2012 letter from Ms. L.'s attorney to the DOE; and

(i) a notice from the Social Security Administration ("SSA") to Ms. L. that indicated that J.R. was receiving Supplemental Security Income, which is a poverty-based program administered by the SSA.

85. In addition to her own testimony at the February 26, 2013 hearing date, Ms. L. presented testimony from Elizabeth Ballantyne, one of J.R.'s classroom teachers during the 2012–2013 school year, and Beth Schneider, the Associate Head of School at Mary McDowell during the 2012–2013 school year.

### The IHO's March 19, 2013 Findings of Fact and Decision

86. In a March 19, 2013 Findings of Fact and Decision ("FFD"), IHO Mora determined at *Burlington* Prong I that the DOE failed to offer a FAPE for the 2012–2013 school year, as the DOE's recommended 12:1+1 program would not have provided sufficient support for J.R. The IHO noted that J.R. had recently struggled in classrooms with 10 and 11 students at Mary McDowell.

87. The IHO determined that Ms. Datre's classroom at P.S. 8, where the IHO determined J.R. would have been placed, was not appropriate for J.R. as three of the students in Dr. Datre's class had behavior problems.

88. The IHO further determined that the DOE failed to provide a placement school that could implement the May 2012 IEP as P.S. 8 "did not have sufficient staff to meet the IEP mandate" that J.R. be tested in a location with minimal distractions.

89. At *Burlington* Prong II, the IHO determined that Mary McDowell provided J.R. with an appropriate placement and services for the 2012-2013 school year.

90. At *Burlington* Prong III, the IHO found that Ms. L. had cooperated with the DOE and, therefore, equitable considerations supported Ms. L.'s claim for tuition funding.

91. IHO Mora ordered the DOE to fund J.R.'s placement at Mary McDowell for the 2012-2013 school year.

**The Administrative Appeal**

92. By an April 23, 2013 Verified Petition, the DOE appealed IHO Mora's FFD to the SRO.

93. In asserting that it had offered J.R. a FAPE for the 2012-2013 school year, the DOE argued that its recommended 12:1+1 program recommendation "conforms with requirements set by state regulations" for "students whose management needs interfere with the instructional process."

94. The DOE also argued that its 12:1+1 program recommendation was appropriate because the record indicated that J.R. made some progress in Mary McDowell classrooms that contained 10 or 11 students.

95. With regard to the proposed public school placement, the DOE first argued that the IHO's decision that P.S. 8 was inappropriate for J.R. was irrelevant and speculative.

96. The DOE additionally argued that Ms. L.'s November 19, 2012 due process complaint did not allege that P.S. 8 was inappropriate due to students' behavioral issues or because the school could not fulfill the IEP's testing mandates and, therefore, the DOE was not required to prove that it could have implemented the IEP and appropriately grouped J.R.

97. The DOE also argued that P.S. 8 could have implemented the testing accommodations on the May 2012 IEP because the IEP only required that J.R. take "state and local assessments" in a location with minimal distractions.

98. With regard to *Burlington* Prong II, the DOE asserted that Mary McDowell was not in fact an appropriate placement for J.R.

99. The DOE asserted in regard to *Burlington* Prong III that equitable considerations did not support Ms. L.'s claim for tuition funding and, even if Ms. L. was otherwise entitled to tuition funding, she had not shown that the DOE should be required to pay J.R.'s 2012-2013 school year tuition directly to Mary McDowell.

100. Ms. L. filed a Verified Answer and Cross-Appeal on May 31, 2013, responding to the DOE's Petition and setting forth her own objection to one finding in the FFD.

101. In answering the DOE's claims on *Burlington* Prong I, Ms. L. first asserted that the DOE failed to meet its burden of proving that it offered a FAPE to J.R. for the 2012–2013 school year, as it provided no evidence at the impartial hearing demonstrating how a 12:1+1 program could meet J.R.'s specific needs.

102. Ms. L. asserted that the DOE mischaracterized the hearing testimony regarding J.R.'s progress in 10 and 11 student classes at Mary McDowell, and asserted that J.R.'s difficulty in those classes only undermined the DOE's position that J.R. could progress in a DOE class with 12 students and only one teacher.

103. Ms. L. asserted that the IHO correctly determined that P.S. 8 was an inappropriate placement for J.R.

104. Ms. L. stated that her November 19, 2012 due process complaint raised the claims relevant to the FFD's determinations and, at any rate, the DOE had "opened the door" to all the issues adjudicated in the FFD by eliciting testimony relevant to the claims in presenting its case at the impartial hearing.

105. With regard to the DOE's arguments on *Burlington* Prongs II and III, Ms. L. asserted that the IHO correctly determined that Mary McDowell was an appropriate placement for J.R. and that the equities favored her claim for direct tuition funding.

16

106. Ms. L. cross-appealed the IHO's decision to allow the DOE to submit evidence that it failed to disclose until the first day of the impartial hearing.

**The SRO's November 25, 2014 Decision**

107. On November 25, 2014, SRO Carol H. Hauge overturned IHO Mora's March 9, 2013 decision.

108.   Pursuant to the federal regulations implementing the IDEA, the SRO was required to issue a decision in the DOE's appeal "not later than 30 days" after the receipt of the request for review. 34 C.F.R. § 300.515(b)(1). In flagrant violation of this mandate, the SRO did not issue a decision for over 17 months after the appeal was fully submitted and over 20 months after IHO Mora granted Ms. L.'s claim tuition payment.

109. The SRO first determined that it was within the IHO's discretion to admit the DOE's evidence that was not submitted five business days prior to the start of the impartial hearing.

110. Next, while noting that the record did not contain any of the evidence from Mary McDowell that the CSE relied on in making educational recommendations for J.R. for the 2012-2013 school year, the SRO determined that the IEP appeared to correctly reflect J.R.'s "present levels of performance" and, therefore, the DOE's 12:1+1 program was "reasonably calculated to enable the student to receive educational benefits and provide him with a FAPE."

111. The SRO pointed to no evidence in the record beyond the IEP's own statements of J.R.'s management needs and academic levels, as well as the IEP's annual goals, to support its determination that a 12:1+1 program was appropriate for J.R.

112. In a footnote, the SRO asserted that the evidence that J.R. had great difficulty in classrooms with 10 or 11 students at Mary McDowell was unknown to the individuals at the May 2012 CSE meeting because the witness from Mary McDowell, Ms. Schneider, who testified to

J.R.'s difficulties at the impartial hearing did not attend the May 2012 CSE meeting. The SRO did not acknowledge that both Ms. Carfagna, the Mary McDowell teacher that attended the May 2012 CSE meeting, and Ms. L. disagreed with the DOE's 12:1+1 program recommendation at the meeting, and that the IEP reflected J.R.'s ongoing problems during the 2011-2012 school year with attention, frustration, and independent work in his class with 11 students and two teachers.

113. The SRO noted that the individuals at the May 2012 CSE meeting considered and rejected placing J.R. in a program with a larger student-to-teacher ratio than a 12:1+1 program provided. The SRO did not question the fact that while Ms. L. and Ms. Carfagna disagreed with 12:1+1 program as too large for J.R. the DOE did not consider a smaller program for him.

114. The SRO found that Ms. L.'s claims regarding P.S. 8 were "speculative," because J.R. never attended the recommended placement and, therefore, Ms. L. could not prevail on her claims regarding P.S. 8's ability to implement the May 2012 IEP and provide J.R. with an appropriate education.

115. Having determined that the DOE offered J.R. a FAPE for the 2012-2013 school year the SRO wrote, "there is no need to reach the issues of whether Mary McDowell was an appropriate unilateral placement or whether equitable considerations weighed in favor of the parent's request for relief." Additionally, the SRO did not address whether the DOE should be ordered to pay J.R.'s tuition directly to Mary McDowell.

### FIRST CAUSE OF ACTION

116. The SRO failed to hold the DOE to its burden to prove that it provided J.R. with a FAPE for the 2012–2013 school year.

117. The DOE bore the burden of proving that the recommendations contained in the May 2012 IEP, including its recommended 12:1+1 program, were appropriate for J.R. *See Reyes*, 760 F.3d at 215 ("Under New York law, the school district bears the burden of proof, 'including the burden of persuasion and burden of production,' to establish that its proposed IEP provided the child a FAPE") (quoting N.Y. Educ. L. § 4404(1)(c)).

118. The DOE did not present any evidence that indicated how a 12:1+1 class setting would allow J.R. to make meaningful progress despite his significant impairments in working memory, processing expressive and receptive language, as well as his significant difficulty dealing appropriately with frustration and classroom rules and limitations.

119. The DOE did not offer into evidence any of the documents that were before the individuals at the May 2012 CSE meeting and which the DOE relied upon to formulate J.R.'s 2012-2013 school year IEP.

120. The SRO erred in determining that the recommendations contained in the May 2012 IEP, including the recommendation of placement in a DOE 12:1+1 program, were appropriate for J.R.

## SECOND CAUSE OF ACTION

121. The SRO erred in determining that Ms. L.'s claims regarding P.S. 8, the public school placement, were speculative.

122. A school district bears the burden at *Burlington* Prong I of demonstrating that it offered the parent a school placement capable of implementing a student's IEP. *See Reyes*, 760 F.3d at 219 (noting that if a placement school could not address a child's sensory needs or provide an appropriate methodology the "DOE has failed to prove that its proposed IEP provided

[the child] with a FAPE"); *T.Y.*, 584 F.3d at 420 ("[A] school district does not have 'carte blanche to assign a child to a school that cannot satisfy the IEP's requirements'").

123. The DOE elicited the testimony from P.S. 8 special education teacher Ms. Darte indicating that the school was unable to implement the testing accommodations on the May 2012 IEP. Thereby the DOE established that P.S. 8 was unable to fully implement the May 2012 IEP.

124. Ms. Darte's testimony also established that P.S. 8 could not provide the calm environment, free of other children with behavior problems, that J.R. needed to function in an educational setting.

125. The DOE failed to meet its burden to prove that P.S. 8 could implement J.R.'s May 2012 IEP and provide J.R. with a FAPE for the 2012-13 school year.

### THIRD CAUSE OF ACTION

126. The SRO's decision was affected by errors of law, was not supported by the evidence of record, and was not thorough and careful. The SRO's decision should not be accorded deference by this Court and should be reversed.

### FOURTH CAUSE OF ACTION

127. The SRO erred in annulling the IHO's order directing the DOE to pay J.R.'s 2012-2013 school year tuition at Mary McDowell.

128. The IHO's tuition award was appropriate because all three *Burlington* prongs were satisfied:

    (a) the DOE failed to offer J.R. a FAPE for the 2012–2013 school year;

    (b) the IHO's finding on the second *Burlington* prong – that Mary McDowell was an appropriate placement for J.R. for the 2012–2013 school year – is correct and supported by the record;

    (c) the IHO's finding on the third *Burlington* prong – that the equities favor Ms. L.'s tuition claim – is correct and supported by the record.

129. Direct tuition payment was appropriate and fully consistent with the Second Circuit's ruling in *E.M.*

## RELIEF REQUESTED

WHEREFORE, Ms. L. respectfully requests that the Court:

1) Assume jurisdiction over this action;

2) Conduct an independent review of the administrative record and any additional evidence;

3) Enter a judgment finding that:

   (a) The DOE failed to offer J.R. a FAPE for the 2012–2013 school year;

   (b) Mary McDowell was an appropriate placement for J.R. for the 2012–2013 school year; and

   (c) equitable considerations support an award of direct tuition funding for J.R.'s placement at Mary McDowell;

4) Issue an order directing the DOE to make direct payment to Mary McDowell for J.R.'s tuition for the 2012–2013 school year in the amount of $71,808.00;

5) Award Plaintiff reasonable attorney's fees and costs pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(I); and

6) Grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
March 9, 2015

THOMAS GRAY (TG 0880)
PARTNERSHIP FOR CHILDREN'S RIGHTS
Attorney for Plaintiff
271 Madison Avenue, 17th Floor
New York, NY 10016
(212) 683-7999 ext. 246
Fax: (212) 683-5544
tgray@pfcr.org

AMANDA SEN (AS 7484)
PARTNERSHIP FOR CHILDREN'S RIGHTS
Attorney for Plaintiff
271 Madison Avenue, 17th Floor
New York, NY 10016
(212) 683-7999 ext. 249
Fax: (212) 683-5544
asen@pfcr.org